TRADING TECH INTL v. OPEN E CRY, LLC 2012-15-83 Mr. Bossan, when you are ready. May it please the court. There is no issue preclusion here based on this court's previous E.C. claim construction decision. A quick look at the merits shows that the E.C. court did not address the same factual issues that are present here. And also that appellees will not win when they are finally addressed. Of course, you have two different patents here, don't you? You have the 055 and you have 411 with different factual situations. Actually, four patents. The 411, 374 and 768, which have the same spec. And then the 055, which has a different spec. And, you know, just for each claim of those patents... You mean written description? Different written descriptions of PIP with new matter. Thank you. For each claim of those patents to be invalid, it must have been proven by clear and convincing evidence that the inventors were not in possession of what is claimed. Claim 1 of the 411, which you can see at 8777A of the addendum, recites dynamically updating bid and ask indicators in regions next to a price axis and upon receiving market updates, moving those indicators relative to the price axis. It cannot be disputed that the spec discloses those features. If you look on page 18 of the grade brief, we have figures 3 and 4 side by side. In those figures, the bid and ask display regions are shown in columns 1003 and 1004. Are we talking about 055? The 411. 411. 411. When you talk about 411, do you sweep in the others? I'm only focused on 505. Do you sweep in the others? Well, not really. There are some differences between the claims. I'll get to that. I think the issues are similar. I'm focusing on the 411 claims. There's call for bid ask display regions, which are shown in columns 1003 and 1004, and the price axis, which is shown in column 1005, and the relative movement is a result of updating can be seen by comparing figures 3 and 4. Figure 4 shows the screen at a later time after the market went up by three price levels. But in the 411 patent, you deleted the terms static, right, in the continuation. Correct. The claims do not recite the term static. So it's a broader claim. It is broader than the 132.304. And it doesn't have the new matter that the 055 CIP has. The 055 is new matter describing how to recenter. Correct. However, the claims of the 411 and the 374 and 768 do not recite recentering or automatic recentering or a non-static price axis as a feature. So the test, the issue here, let's just focus on the 411. The issue here is can the defendants prove that the inventors were not in possession of the claim for shorthand, all that stuff. In possession as described in the spec. Correct. What you have back in your lab isn't enough. Yes. Can the defendants prove that based on the spec, the inventors were not in possession of what is claimed, which as a shorthand, everything I just said before, I'll call the dynamic relative movement features. The question is not if the inventors are in possession of unclaimed features like automatic recentering or a non-static price axis. Alarm bells should go off every time the appellees try to frame the issue And are the inventors in the possession of a non-static price axis? That is not in the claim. In possession as disclosed. As disclosed. Possession is sort of a long-term language from CCPA cases, but we're really talking about disclosure. The disclosure supports the scope of the claim, and without the term static, it's a generic claim in that respect, isn't it? Every element of these claims that I just went through is specific. Every element of the claim of the 411, as well as the other two continuations, are specifically disclosed in the spec. There's no question. They don't dispute that. That's not even being contested. So the only issue here is this. When that's true, the general rule is written description supported, unless under this Court's precedent, which is, for example, in the Revolution I, or in Crown cases, unless the defendants can prove that the spec requires that the claim features, which are indisputably disclosed, must be practiced with other features in the spec. In this case, they want to say it must be practiced only with manual recenter. Put another way, the defendants must prove, basically, that the spec features a negative limitation, or provide the disclaimer against any claim scope not limited to manual. Let's see if we can focus this argument a little bit, picking up on Judge Lurie's point. What's really at issue is whether the written description describes adequately the claim invention. Is that right? Correct. And that's the issue. What's that got to do with the earlier case? That's what I'm getting to now. So here's what happens. And that's the issue. The issue is, can they prove a negative limitation or disclaimer taught in the spec? That's the issue. Here's the problem. The lower court didn't look at that issue. The lower court did not look at the merits into a four corners analysis. Instead, it thought that this Court, in the Eastby decision, which dealt with two different patents, and it'll be the same spec that was dealing with the claim construction issue, it thought that this Court made findings on the full written description of the patent that are dispositive here, so it granted summary judgment of invalidity based solely on the Eastby decision. And that led to the... But Eastby was a claim construction case. Correct. But this is what I'm trying to describe what the lower court here did, which is that it took statements from that opinion, felt that they were dispositive here, so it invalidated the four patents on appeal here, based solely on that decision, without looking at the merits. Now, the result is no court ever has looked at this substantive issue. If you go back and look at the Eastby case, the issue there was the construction of the term static in the 132 and 304 patents and whether certain products with certain types of automatic recentering infringed those claims. Recentering was interpreted to be part of the claims of the 132 and 304 by virtue of a special definition of static in the spec. The patentees were their own lexicographer on that term. The court did not address whether the spec supports any hypothetical claim that wasn't limited to static. It did not address the negative limitation disclaimer issue, which is really the fundamental issue here. In fact, the decision contains no written description analysis of the sort you would see when this court does address this special issue and does invalidate a patent. Now, the Eastby decision did find that the spec provides no example of automatic recentering, but that's not relevant here. The claims do not recite them. I think that may have been the source of the confusion or maybe where the district court went off course, in our view. Now, our view is this court shouldn't even look at the merits because it would require this court to look at these factual issues in the first instance that were never addressed below by the lower court. But when the appellees argue for their own alternative grounds... If you don't want us to look at the merits, what do you want us to do? Well, what I think should be done is that the decision should be reversed and you should find that the previous Eastby decision was not dispositive. The fact that the claims of the 411, 374, and 768 patents do not recite static is irrelevant and you should remand to the lower court all four patents with instructions that if the defendants want to raise written description defenses, they can. But the lower court should do the four-corner analysis... You're saying the 411 and other patents differ in more than just the absence of the word static. Well, so the 374 and 768 patents, there's differences in the claims. No evidence is submitted on the merits of those below, but like the 411, all the claim elements are directly disclosed in this fact. Like the 411, they don't require static. And like the 411, they do not require a limitation of recentering or auto-recentering. The issue is similar. The 055 is different because on top of all that, the 055 is new matter. And doesn't it redefine the static idea, the 055? Well, static as it was construed by this court... Yes, static and the 055 does not mean the same as how static was construed by this court because the term static is said... This is undisputed. The 055 spec says static is price levels that do not move unless there's a recentering command described later in the spec. It held to be manual. Pardon? It held to be manual in the earlier... Yeah, the only example of recentering in the 132 and 304 was manual. The 055 is another example, actually multiple examples of automatic. So you're saying the same term should be construed differently with respect to the 055 spec. Yeah, we think it's clear. Now, no court's done, I'll admit, no court's done a claim construction ruling on that. We think it's crystal clear just from looking at the intrinsic evidence. It would be hard to imagine otherwise. This isn't really new matter in a technical patent sense. It's simply added material in a CIP. Yeah, the CIP, basically the 132, had described various inventions. There's multiple inventions, and one of them was static, how this court construed it. The 055 was filed in 2002, well before any of this litigation began, saying here's some more innovations to build upon the original innovation. Some of the same inventors on it, and one of those new innovations was automatic recentering, saying you could use this width on top of, there's a bell and whistle on top, which kind of goes to the crux, the real crux of this. For the defendants to win, and you go to the substance, their theory is that automatic movement is an anathema, is in mortal conflict with all inventions described in the 132. That's not true. It's not. The only thing it's in conflict with is the term static, how that was construed. But it's not in conflict with the various other inventions in the patent, and the 411 is claiming, along with the 374 and 768, various aspects of the invention that are flat out, indisputably disclosed in the spec. Is there any rebuttal time? You can save it or use it. I think I will save it. Or do a little vote. I'll save it. Thank you. Mr. Ullman. May it please the Court. Anthony Ullman for all affiliates except Stellar. I'm going to first address the issues concerning the written description in the 411, and then turn to prosecution history at Staple in the 055. Because the 768 and 374 patents, which are continuations of the 411 and have the same specification, were not litigated below in rise or fall with the 411. When you say specification, let's be very precise. You really are talking about the written description. Is that correct? Yes, up to the claim, up to the part where the claims begin. Specification by statute includes the claim. I want to be sure that I know exactly what the issue is. Do you agree that the issue is the scope of the written description? With regards to the 411, that is the issue, the scope of the written description. The 768 and 374 have the same written description. It's hard to say those two words, isn't it? But they were not litigated below, and so I'm not going to address those two patents separately. Okay. It appears that the judge below thought that e-speed, in construing claims, was the same thing or should pertain in a written description analysis. How do you respond to that? She didn't, Your Honor. Judge Kendall was fully aware that the ultimate issue in the e-speed decision was claim construction. Then why did she... Because what she concluded, as we believe is correct, is that in the course of reaching its ultimate claim construction ruling, this court in e-speed made determinations as to the disclosure, the written description in the specification. In e-speed, this court wrote that the patentee had acted as their own lexicographers and defined the term static in the specification. TT's position in e-speed was that in the specification, the patentees had defined static to include automatic movement. So this court looked very carefully, de novo, to ascertain whether TT's contention was correct, and it determined that that was not correct. This court wrote in e-speed, and I quote, the specification contains no reference to automatic recentering. And that's on page 1353 of e-speed. And the court also reviewed other portions of disclosure and commented on them specifically in the decision. Among others, it looked at the portion of the specification, which appears in the 411, in column 9, around lines 15 through 20, which addresses specifically what TT likes to call relative movement. And what the court found there, that goes to where the court said the inside market can move off the screen. That's what the specification says. And the court wrote that in this situation, the e-speed court said, that the specification discloses that the system of the present invention, the system of the present invention, is manually recentered only. And the court went through the specification and concluded there was nothing in the written description of part of the specification that showed that the inventors were possessed of automatic movement, as TT was contending at that time. Now, those determinations by the e-speed court were not solely dispositive of the ultimate claim construction ruling in e-speed, but under this court's decision in Phillips, they were clearly essential to it. I'd also like to mention that they've made the argument in their brief that the issues were not the same because in e-speed, this court did not say that its review of the specification was under a clear and convincing standard. First of all, that argument was not raised below or in the opening brief and was waived. And in any event, it's wrong. Our burden on summary judgment was to show clearly and convincingly that the claims of the 411 patent go beyond what's disclosed in the specification. And it's uncontested that the claims of the 411 patent cover automatic recentering. And in e-speed, this court previously determined the specification... But do they specify centering at all? No, they're totally generic. They cover any type of recentering, whether it's... In other words, they're not focusing on this issue. Pardon me? They're not focusing on that issue. In where? In the claims of the 411 patent. No, they're clear. Everyone agrees they're broad enough and that's the problem to cover automatic recentering, whereas the specification is far... Did the district court construe the claims in that respect? Yes, and they were not subject to dispute, and the court wrote in various places that the claims cover automatic recentering, and TT agreed with that. And as this court previously determined in e-speed, the specification, which is the same in the 411 as it was in the 132, discloses only manual movement, not automatic movement. Now, the 055 patent is different, right? The 055 is different. And with the court's permission, I'd like to just make a few concluding remarks on the 411 and get there, because I don't want, in my own mind, to confuse the two, if that would be acceptable. Sure time. Okay. Last point I'd like to make, and then I'll turn very quickly to the 055, is that while we believe the e-speed decision is determinative, if you look independently at the specification, what you see for largely the same reasons is that the specification in the 411 talks only about manual recentering. If you read the specification, it repeats consistently that the price axis as described there is static. And we know from e-speed that the word static means it can't move through automatic recentering. And that's not in contention. And if you look specifically at the portion of the specification which talks about what they like to call relative movement, which is column 9, lines 4 through 25, what the specification says is that the inside market can move off the screen, and the specification continues to do so. It says the bids and asks, the quantities, can move up and down, but the price axis remains static. That's what the specification says. The only movement that's disclosed in the specification is manual only. Now, the specification in the 411 patent is different in part from the specification in the 055 patent. Big difference. Well, in part, Your Honor. Now, the reason the 055 patent... Well, if it was different in whole, it would be about a different invention. It would, but in the part... Yes, Your Honor. But in the part that Mr. Gorsan is talking about, I don't believe there really is a very significant difference. There's a language difference. But the point of manual versus automatic re-centering is quite different. I do not agree with that, Your Honor. Really? No, Your Honor. If you start, if you actually... Just remember what the e-speed court held in the 132... The e-speed turned on that difference, didn't it? Yes. Yes, it turned... So that difference is critical to the differentiation. Right, and my point is that the specification in the 055, the claim term, which what Judge Kendall found is that the claim term static is used in the 055 has the same meaning as in the 132 patent. The 055 has a different definition. I don't agree with that, Your Honor. No. I do not, Your Honor. Okay. Because we start out with a premise that, as we know from e-speed, that the court found that during the prosecution of the 132 and 304, the patentees disclaimed any subject matter that moves automatically. And that gave rise to a prosecution history estoppel. It's part of the public record, something on which the public is entitled to rely. And under this court's jurisprudence, that same prosecution history estoppel and the same meaning of the term static carries over to related patents that use the same subject matter, including the 055. That's what the L.K. and other cases say. Now, T.T.'s argument is that in the 055, it effectively rescinded this prosecution history estoppel because it says in the 055, even though we're using the same term static as the 132, the parent application, we're using it in a different way. But, Your Honor... Are you saying they couldn't do that? I'm saying that if it was very clear... It's not clear under the case law whether they could, but at minimum, if they could do that, it would... I'm not aware of any case where that's actually happened. If they could do that under the case law, I believe it would have to be unmistakable and clear to put the public on notice that whatever they may have understood from the prior patents, whatever they may have understood from the prosecution history should be disregarded, thrown out the window, cannot be relied on, has no connection here. Do you have some authority for that proposition, or is that all your argument that we have... No, that's not. That's not, Your Honor. In the OMEGA case, the court stated the basic rule that the same claim terms used in a related patent have the same meaning, and the only exception... We also have a basic rule that says every patentee can be his own lexicographer. Yes, absolutely, Your Honor. And the OMEGA court said that the presumption that the words mean the same thing apply unless you're compelled otherwise. And what I'm saying is that there is no... When you read the 055 carefully, there is nothing in it that compels a different conclusion. The 055 patent starts out on page 1 by referring to the 692 application, which is what led to the 132 and the 304. The 055 patent... Your Honor? The 055 specification at least twice refers to automatic recentering. It does, Your Honor, but the problem that T.T. has, which is why they agreed... Remember, Judge Kendall did not rule this patent invalid. T.T. asked her to adjudge it invalid because they found that they contended that if Judge Kendall was right, then the patent is inoperable and invalid, which is what they said at 822-187 and 822-189, note 8. Well, the inoperability is before us. No, it isn't. But to answer your question, there's a difference between... The question that we're addressing is what does the term static mean? The problem that T.T. has is that if static means what Judge Kendall concluded it means, which we believe is the right answer, then they have an access of the static, meaning it can't move automatically, juxtaposed with language saying a static access moves automatically. Doesn't it mean what the specification defines it as meaning, and the 055 specification is expressly different in that respect? No, Your Honor, it is not. Let me tell you why. If you look at... The next point is on Column 1, the 692 application, which covers the 132 and the 304, now is incorporated by reference into the 055. If you look at Column 4 of the 055, what it says, there it starts to talk about what the term static means. And what it says is, if you look around lines 52 to 53, it starts out by giving an example of the static price access in the context of the claims. And the example it gives is Figures 3 through 5 of the 055 patent. Now, Figures 3 through 4 are discussed in Columns 7 through 9. Figure 5 is essentially the same as Figure 3. Now, if we turn over to Column 7, starting at Line 20, what we see is that Figures 3 through 4 of the 055 patent show the same static access that's claimed in the 132 and 304 patents that was discussed in ESPE. Because both those patents emanated from the 692 application, which is referred to directly in Column 7. So that's where Figures 3 through 4 come from. So the specification itself clearly links the term static as used in the 055 with the term static as used in the 132 and 304, which we know from ESPE excludes automatic movement. Then looking further in Columns 7 through 9, consistent with that, those columns go on to describe the price access in Figures 3 through 4 as static, with the only disclosed movement being movement that is through manual re-centering. Now, I turn back to Column 4, Lines 53 through 55, which is language that TTs refer to. And it says, and I quote, in this context, static does not mean immovable, but rather means fixed in relation. And that doesn't say that the term static as used in the 055 patent means movement that's automatic. Rather, the language that I've just read is fully consistent with an access that can be moved manually only. Because an access that can be moved only manually also is not immovable because it can be moved manually when the user enters the manual re-centering command, or it can be moved manually when the user re-centers by scrolling. So, when you put all this together, what you get is... I'm sorry, did you have a question? My question is, would you please read the paragraph in Column 3, summary, the second paragraph, starting with, in accordance with the second aspect, Column 3, line 27, 26, I guess. Yes? Yeah. That's exactly right. And so, it refers to both automatic and static. So, what you end up with is a patent that claims an access that's static, and yet, at the same time, refers to the static access moving automatically, which, as I said, is internally inconsistent, contradictory, confusing. But there's nothing in the 055 patent that says that the term static itself means something different from that same term as used in its parent 132 or the related 304 patents. If you have a static situation that moves automatically, that seems to me to be entirely inconsistent with a static situation that can only be moved manually, as Judge Lurie pointed out. Well, Your Honor, by definition, something that's static, as construed in e-speed, which is directly linked in the 055 patent, static access can't move automatically. So, what you have... Is what it says. That's exactly right. And that, Your Honor, is why GT went to Judge Kendall and said, you know, if you're right that static means the same thing as in e-speed, then the claims of this patent are inoperable and invalid. And that happens sometimes, that patentees who are the masters of their own patent write claims that at the end of the day do not make complete sense. And in this case, what you have is a TT claimed an access that is static, at the same time made reference to it being able to move automatically. But if you read the specification, there is nothing that puts the public on clear notice that the term static as used in this patent means something different from the same term as used in its parent, the 132, or the related 304. And I see that I'm slightly out of time. Our clock has not been static, Mr. Ellman. Your time has expired. Are there further questions from the panel? So we'll thank you for your argument. And Mr. Borsand has a couple of minutes rebuttal. Four minutes, was it? We're talking a lot about the merits here. Merits that were never looked at by any court ever. Not the EC court, not the lower court. But the merits don't help them. If this case is, if you would do what we're asking and send it back, and the merits are looked at, it doesn't help them. Because they have the wrong test. They keep saying, Mr. Olman just said it, the patent doesn't show automatic recentering. It only describes manual recentering. For the 411, 374, and 768 patents, that's irrelevant. The claims do not recite recentering as a feature. They don't recite auto-recentering. If the court wanted to look at the merits or just even seized to further establish that the same issues weren't addressed in these details, I would invite the court to look at TT's expert declaration below, which begins at A15841. We never look at merits if we can find an alternative way out. Okay. Good. What you'll see is, we put in evidence, the TT put in evidence, when it's not the burden, their burden, showing that every element disclosed, they didn't dispute it. Showing there was no disclaimer, which is what they need to prove, they didn't dispute it. They don't even contend to disclaimer if you look at their expert declaration. They're just simply missing it. They have the wrong test. And, what's more, is the patent here, it's focusing again on the 411, et al., the three continuations. The patent here goes above and beyond what's required under the law because, not only does it describe each element, and those elements are features that can be claimed because they achieve advantages described in the spec, the spec, the provisional, actually identifies the claimed element of the 411. The claimed features is a separate innovation. It's called innovation number 12. The defendants admitted that the provisional has described innovation number 12, which is at A, well, the provisional starts at A20993. In their innovation number 12, they admit it's disclosed as a separate innovation than innovation number 19, which is manual recenter. So, we go above and beyond when the court finally does look at the merits that it should. Do you mean in another case? Well, hopefully, Judge Pendle, again, if this is remanded. Now, you know, I'm focusing just for a second on collateral estoppel, issue preclusion. The NISD court was a claim construction case. Claim construction is different. How about prosecution history estoppel? Pardon? Prosecution history estoppel. Oh, well, prosecution history estoppel, that decision, again, cannot apply to a CIT like 055 where the term static was clearly, the meaning of it was clearly expanded. I don't even think the parties dispute that. If there's a child patent, especially a CIT, that provides an expanded or different or new meaning that an estoppel... I heard him disputing that very point. Well, what they dispute is they say it means the same thing. And they incorrectly state that Judge Kendall found it meant the same thing. She never found that. The lower court never found that static and the 055 means the same thing. She found the opposite, actually. That's the basis of her invalidity ruling. Each patent was invalidated because it was broader than the claims of the 132 patents. She did not find the patent invalid because it was inoperable. The only reason expressed for invalidity on all the four patents was to the extent they cover automatic repositioning. And that's clearly what happens. So their position is static means the same thing. If static meant the same thing, then prosecution history estoppel from a parent probably would apply to a child. But what I don't think they disagree with if you read the briefs is if it means something different. They just say it means the same thing. And they're wrong on that. And so they also make the argument that we need some type of rescission. We're not even arguing rescission here. We're saying it has a different meaning. Mr. Borsan, the same static issue applies to you. And we'll conclude the argument and take the case under submission. Thank you. Thank you.